IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

In re

RECIPROCAL OF AMERICA (ROA)
SALES PRACTICES LITIGATION

Master File No. MDL 1551

This Document Relates to:
Civil Action No. 04-2294

---

ORDER DENYING MOTION OF DEFENDANT GERALD R. WAGES
TO DISMISS COMPLAINT OF MISSOURI HOSPITAL PLAN, ET.AL.,

---

Before the Court in this multi-district litigation are the motion of the Defendant, Gerald R.

Wages, to dismiss this action pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, or

in the alternative, to Dismiss for Failure to State a Claim under Rule 12(b)(6); the response

Memorandum in Opposition filed by the Plaintiffs, and the Reply of Wages.

The Plaintiffs, Missouri Hospital Plan ("MHP"), Hospital Services Group, Inc. ("HSG"),

Healthcare Services Association ("HSA"), Providers Insurance Consultants, Inc. ("ProCon"), and

Medical Liability Alliance ("MLA"), state in their Complaint that in August 2000, plaintiffs and non-

party Reciprocal of America ("ROA"), The Reciprocal Group ("TRG"), and Doctors Insurance

Reciprocal ("DIR") entered into a series of contractual agreements whereby the parties agreed to

combine business operations, subject to Plaintiffs' right to terminate the business combination prior

to closing. (2d. Am. Compl. at ¶ 31.) Plaintiffs terminated these agreements effective April 11, 2002

due to the deterioration of the financial condition of ROA following a downgrade of ROA's financial

rating (2d. Am. Compl. at ¶ 33.) Plaintiffs claim that as a result of being induced into the agreement

they have sustained substantial damages. (2d. Am. Compl. at ¶ 39.)

The Plaintiffs assert that movant Wages is a Mississippi resident, who served as a member

of the Board of Directors of ROA from August 1995 until August 2002, and was Chairman beginning in August 1999 until August 2002. Plaintiffs claim that Wages engaged in a schedule and plan to commit fraud and other wrongs causing them damages, and that he was negligent in his duties to exercise reasonable care and competence as Chairman of the Board at the time that Plaintiffs entered into a contract with ROA

Plaintiffs' causes of action include Civil RICO claims, founded upon 18 U.S.C. 1961, *et. seq.* It is asserted that Wages and other defendants engaged in a "pattern of racketeering activity, or conspired to do so" (2d. Am. Compl. at ¶¶ 60, 64.) that "consisted of the use of fraudulent schemes, including numerous instances of mail fraud and wire fraud." (2d. Am. Compl. at ¶ 66.) In furtherance of these schemes, Wages and other defendants "represented [to Plaintiffs] on numerous occasions that the financial condition of ROA, TRG, DIR, [and other entities] was different than that which was ultimately determined to be the case[.] " (2d. Am. Compl. at ¶ 133.)

In cases transferred from one federal judicial district to another pursuant to a change of venue, the transferee court shall "apply the law of the transferor court, regardless of who initiates the transfer." Ferens v. John Deere Co., 494 U.S. 516, 110 S.Ct. 1274, 108 L.Ed.2d 443 (1990), see also, Van Dusen v. Barrack, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). This same principle has been traditionally followed in cases consolidated by the multidistrict panel pursuant to the provisions of 28 U.S.C. §§ 1407. In re San Juan Dupont Plaza Hotel Fire Litigation, 745 F. Supp. 79, 81 (D. Puerto Rico,1990); see also In re Air Crash Disaster Near Chicago, Ill. on May 25, 1979, 644 F.2d 594 (7th Cir.1981); In re Air Crash Disaster at Washington, D.C. on January 13, 1982, 559 F. Supp. 333 (D.D.C.1983). Therefore, as this case originated in the United States District Court for the Western District of Missouri but transferred to this district as part of an order from the multidistrict

panel, Missouri law governs in this matter.

The Court will first address the Defendant's contention pursuant to Federal Rule of Civil Procedure 12(b)(2), which permits a district court to dismiss a complaint when jurisdiction over the person is lacking. Where a federal court's subject matter jurisdiction over a case is based on the existence of a federal question, as it is here, personal jurisdiction should be grounded in state long-arm jurisdiction statutes. Enterprise Rent-A-Car Company v. U-Haul Intern., Inc., 327 F. Supp.2d 1032, 1036 (E. D. Mo. 2004) (citing Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd., 484 U.S. 97, 104-05, 108 S. Ct. 404, 98 L. Ed.2d 415 (1987)). A federal court may exercise personal jurisdiction over a defendant in the manner provided by state law. See Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1072 (8th Cir.2004).

The Missouri long-arm statute allows for jurisdiction over "any person or firm" as to any cause of action arising from

> (1) the transaction of business within the state;
> (2) the making of any contract within this state;
> (3) the commission of a tortious act within this state;
> (4) the ownership, use, or possession of any real estate situated in this state;
> (5) the contracting to insure any person, property or risk located within this state at the time of contracting[.]

Mo. Rev. Stat. § 506.500 (2003). The statute "authorizes the exercise of jurisdiction over non-residents to the extent permissible under the due process clause[; therefore, a court should] turn immediately to the question whether the assertion of personal jurisdiction would violate the due process clause." Porter v. Berall, 293 F.3d 1073, 1075 (8th Cir. 2002). In order to exercise jurisdiction consistently with due process requirements, "a defendant must have sufficient minimum contacts with the forum state "such that 'maintenance of the suit does not offend traditional notions

3

of fair play and substantial justice.'" Burlington Indus., Inc. v. Maples Indus., Inc., 97 F.3d 1100,

1102 (8th Cir.1996), (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 90

L. Ed. 95 (1945)). More particularly, there must be "'some act by which the defendant purposefully

avails [himself] of the privilege of conducting activities within the forum State, thus invoking the

benefits and protections of its laws.'" Dever, 380 F.3d at 1073, (quoting Hanson v. Denckla, 357

U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958)).

General jurisdiction involves the exercise of personal jurisdiction over a defendant in an

action which does not arise out of a defendant's contact with the forum. Helicopteros Nacionales de

Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.9, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984). A court

may exercise general personal jurisdiction over a "defendant who has continuous and systematic

contacts with the forum state, even if the injuries at issue in the lawsuit did not arise out of the

defendant's activities directed at the forum." Dever, 380 F.3d at 1073 (8th Cir. 2004)(internal

quotation marks omitted).

In a case involving specific personal jurisdiction, "jurisdiction is viable only if the injury

giving rise to the lawsuit occurred within or had some connection to the forum state." Dever, 380

F.3d at 1073. In other words, the cause of action must "'arise out of' or 'relate to' a defendant's

activities within a state." Lakin v. Prudential Sec., Inc., 348 F.3d 704, 707 (8th Cir. 2003) (quoting

Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)). In

determining whether the district had personal jurisdiction over a defendant, the court should consider

"'(1) the nature and quality of [his] contacts with [Missouri]; (2) the quantity of such contacts; (3)

the relation of the cause of action to the contacts; (4) the interest of [Missouri] in providing a forum

for its residents; and (5)[the] convenience of the parties.'" Dever, 380 F.3d at 1073-74 (internal

quotation omitted). We give "significant weight... to the first three factors." Id.

As the Defendant has challenged the Court's personal jurisdiction over him, the burden of establishing the existence of such jurisdiction lies with the Plaintiffs. See Gould v. P.T. Krakatau Steel, 957 F.2d 573, 575 (8th Cir. 1992). In the absence of an evidentiary hearing on the question, a plaintiff need only make a prima facie showing of personal jurisdiction. Id. (citing Dakota Industries, Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir. 1991)). In deciding whether a plaintiff has made the requisite showing, the Court must take all disputed facts and reasonable inferences in favor of the plaintiff. See First National Bank of Lewisville, Ark. v. First National Bank of Clinton, Kentucky, 258 F.3d 727, 729 (8th Cir. 2001).

In support of his motion, Wages, who identifies himself as a resident of the State of Mississippi (see Gerald R. Wages' Mot. to Dismiss for Lack of Pers. Juris., or alter., Mot. to Dismiss for Failure to State a Claim, Ex. 1 (Aff. of Gerald Wages ("Wages Aff.") at ¶ 2) and a former member of and one time Chairman of the Board of Directors of ROA (see Wages Aff. at ¶ 5) maintains that he has never been a resident of Missouri (see Wages Aff. at ¶ 3). He further states that "[he] ha[s] never conducted or transacted any personal business in the State of Missouri[;] ha[s] never entered into any personal contracts within the State of Missouri[; and] do[es] not own, use or possess any real estate or personal property located within the State of Missouri." (Wages Aff. at ¶¶ 6-8.)

In response to Wages' motion, Plaintiffs contend that Missouri's long-arm statute is to be broadly construed, such that even a single business transaction in Missouri is sufficient to satisfy the "transacting any business" requirement, citing Scullin Steel Co. v. National Railway Utilization Corp., 676 F.2d 309, 311 (8th Cir. 1982), see also Peabody Holding Co. Inc. v. Costain Group PLC,

808 F. Supp. 1425, 1433-34 (E. D. Mo.1992); and aver that an act in one forum which results in an injury in Missouri satisfies the state's long-arm statute, citing Tax Lease Underwriters, Inc. v. Blackwall Green, Ltd., 613 F. Supp. 1082 (8th Cir. 1985) and Pfeiffer v. Int'l Academy of Biomagnetic Medicine, 521 F. Supp. 1331 (W.D. Mo. 1981). Moreover, Plaintiffs submit, when, through acts performed entirely outside the forum, a defendant sets in motion a course of action deliberately designed to move into the forum state in order to injure Plaintiff's business, the defendant is considered to have committed a tortious act within the state. Pfeiffer, 521 F. Supp. at 1336. In support of their position, Plaintiffs offer the affidavit of Robert Dunn, former President of Plaintiff MHP, describing a series of meetings in Jefferson City, Missouri in March 1999 attended by Gerald Wages, and during the course of which, Wages and other defendants made presentations regarding the financial condition and operations of ROA and other related entities. (see Mem. in Opp'n to Def. Gerald Wages' Mot. Dismiss (Mem. in Opp'n"), Ex. A (Aff. of Robert P. Dunn ("Dunn Aff.")) at ¶ 9). Plaintiffs aver that Wages' attendance at these meetings was sufficient transaction of business in the state of Missouri for personal jurisdiction. They further contend that actions by certain other defendants, aimed at soliciting Plaintiffs to enter into a business combination with ROA, TRG, and DIR were undertaken "with the knowledge and consent of Wages, and ultimately under his direction and control as Chairman of the Board, "and that these actions "constitute the transaction of business within Missouri." (Mem. in Opp'n, p. 4). Plaintiffs also argue that the tortious acts committed by these other defendants should be imputed to Wages for purposes of determining whether sufficient contacts with the forum exist to justify personal jurisdiction.

In reply, Defendant insists that while his attendance at the meetings in Jefferson City might constitute the transaction of business by ROA, it was not the transaction of Wages' personal

business, a fact not disputed by Plaintiffs.  Wages correctly points out that Plaintiffs have relied primarily on cases which discuss jurisdiction over corporations, but which do not address jurisdiction over the individuals acting on the behalf of the corporate entities.  He also maintains that the other defendants were not agents of Wages, but agents of ROA, again asserting that Defendant had no personal interest in the acts of these defendants.

In one of the cases cited by the Plaintiffs, Chromalloy American Corp. v. Elyria Foundry Co., 955 S.W.2d 1 (Mo. 1997), the Missouri Supreme Court held that jurisdiction was proper over a corporation where the corporation's president had twice personally visited Missouri in connection with a business deal. Id. at 2.  However, the court only found jurisdiction over the corporation itself, but did not address jurisdiction over the corporation's president individually, who was not a named party.  See Id.; see also Watlow Elec. Mfg. Co. v. Patch Rubber Co., 838 F.2d 999 (8th Cir. 1988)(jurisdiction was proper where a corporation sent materials into the state for manufacture, notwithstanding the corporation's representative attendance at a meeting in the state; jurisdiction over the individual representative also was not addressed).

In Peabody Holding Co. Inc., 808 F. Supp. at 1433-34, and in May Dep't Stores Co. v. Wilansky, 900 F. Supp. 1154, 1159-60 (E.D. Mo.1995), two district courts sitting in Missouri determined that the "commission of a tortious act" provision of Missouri's long-arm statute extended to a defendant corporation where the sole basis for jurisdiction was an extraterritorial act of tortious interference with a contract which produced an effect in the State of Missouri. However, both courts concluded that, while Missouri's long-arm statute reached the defendants, exercising jurisdiction over the defendant corporations would violate due process. Peabody Holding Co. Inc., 808 F. Supp. at 1436-38, and May Dep't Stores Co., 900 F. Supp. at 1161. In both cases, the plaintiffs could point

to no contacts other than the impact of the defendants' alleged tortious activity upon plaintiffs in the form of economic damages. Peabody Holding Co., 808 F. Supp. at 1437; May Dep't Stores, 900 F. Supp. at 1161. Such limited contact alone, was "so attenuated that the maintenance of a suit would offend traditional notions of fair play and substantial justice." May Dep't Stores, 900 F. Supp. at 1161 (quoting Peabody Holding Co., 808 F. Supp. at 1437-38).

In another case, although the proffered evidence showed that the defendant corporation had more contacts with the forum state, including customers other than the plaintiff and two visits to the forum state, the court found these additional contacts insufficient to subject the defendant to personal jurisdiction. H & W Wire Corp. v. Lone Star Wire, Inc., 34 F.3d 1070 (8th Cir. 1994). The court pointed out that the parties' contract required delivery in a non-forum state, and therefore the defendant did not avail itself of the benefits and protections of the forum state "for the facilities at which [it] took possession" of the goods purchased, because the defendant took possession elsewhere. Id. The court held that the cumulative effect of the defendant's contacts with the forum state, the visits and the correspondence of a non-resident buyer, even combined with a small number of "other customer" contacts, was insufficient to support the conclusion that the defendant purposefully directed its efforts toward residents of the forum state. Id.

In the case at bar, the movant, Gerald R. Wages, had contact with the forum state of Missouri solely in his capacity as a representative of ROA. However, his actions in an official capacity does not necessarily insulate him from the jurisdiction of this court. See Cantrell v. Extradition Corp. of America, et.al., 789 F. Supp. 306, 309-310 (W.D. Mo. 1992)(citing Calder v. Jones, 465 U.S. 783, 790, 104 S. Ct. 1482, 1487, 79 L. Ed. 2d 790 (1984) (the defendants' "status as employees [of a corporation] does not somehow insulate them from jurisdiction.") To determine jurisdiction, "[e]ach defendant's contacts with the forum State must be assessed individually." Id. In the Courts view,

8

Wages' contacts, his presence in the forum state and participation in the meeting with Plaintiffs, are sufficient to satisfy the "transacting any business" requirement of Missouri's long-arm statute. See Scullin Steel Co. v. National Railway Utilization Corp., 676 F.2d 309, 311 (8th Cir. 1982)(even a single business transaction in Missouri is sufficient); Sloan-Roberts v. Morse Chevrolet Inc., 44 S.W.2d 368 (Mo. Ct. App. 1998)(holding Missouri resident's purchase of a car from Kansas dealership was "transacting business" in Missouri); Schilling v. Human Support Services, 978 S.W.2d 368 (Mo. Ct. App. 1998)(holding the repair, in Missouri, of a vehicle owned by an Illinois resident was "transacting business" in Missouri). Thus, Plaintiffs have made a *prima facie* showing of personal jurisdiction over this Defendant. Accordingly, Wages' motion to dismiss for lack of personal jurisdiction is DENIED.

The Defendant further asserts that dismissal is appropriate under Rule 12(b)(6), which permits dismissal of a lawsuit for failure to state a claim upon which relief could be granted. See Fed. R. Civ. P. 12(b)(6). A court may dismiss a cause of action for failure to state a claim if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed.2d 80 (1957); Alexander v. Peffer, 993 F.2d 1348, 1349 (8th Cir.1993). "The issue is not whether plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support [his] claim." Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed.2d 90 (1974); see also Bennett v. Berg, 685 F.2d 1053, 1058 (8th Cir.1982) (a complaint should not be dismissed merely because the court doubts that a plaintiff will be able to prove all of the necessary factual allegations). The Court must review the complaint most favorably to the plaintiff and take all well-pleaded allegations as true to determine whether the plaintiff is entitled to relief. Conley, 355 U.S. at 45-46. A dismissal under Rule 12(b)(6) should be granted only in the unusual case in which a plaintiff has presented

allegations that show on the face of the complaint that there is some insuperable bar to relief. Coleman v. Watt, 40 F.3d 255, 258 (8th Cir.1994).

"Under Missouri law, it is the law of the state of incorporation which governs a claim against officers or directors for failure to act with fidelity." Ranch Hand Foods, Inc. v. Polar Pak Foods, Inc., 690 S.W.2d 437, 444 (Mo. App. W.D. 1985) ( citing St. Louis Union Trust Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 412 F. Supp. 45 (E.D. Mo.1976) reversed 562 F.2d 1040 (8th Cir.1977) cert. denied, 435 U.S. 925, 98 S. Ct. 1490, 55 L. Ed.2d 519 (1978)). As ROA was formed in the State of Virginia, Plaintiffs must plead facts that, if proven, would establish the breach of a duty imposed on Wages by Virginia law.

Defendant maintains that he owed no duty to Plaintiffs that gives rise to the claim of negligence in the oversight and management of ROA and its officers. He contends that the general rule under Virginia law is that a third party has no cause of action against a corporation's directors for failure in performance of their duties. Bank of America v. Musselman, 222 F. Supp. 2d 792, 797-99 (E.D. Va. 2002) (citing Anderson v. Bundy, 161 Va. 1, 171 S.E. 501, 508 (1933).

In Musselman, a federal district court sitting in Virginia acknowledged that the question of whether an officer of an insolvent company may be sued by creditors in the absence of self-dealing by the officer had not been resolved by the Supreme Court of Virginia. Musselman, 222 F. Supp. 2d at 796. The court, rather than certifying the question to the Supreme Court of Virginia, chose to analyze related principles in existing Virginia law and canvass authority from other jurisdictions to reach a conclusion as to what the Supreme Court of Virginia would decide if presented with the issue. Id. The Musselman court found that the Supreme Court of Virginia had held that to refuse to recognize this immunity is permitted only in the presence of an "extraordinary exception." Id. at 797 (citing Cheatle v. Rudd's Swimming Pool Supply Co., 234 Va. 207, 360 S.E.2d 828, 831

(1987)(quoting Beale v. Kappa Alpha Order, 192 Va. 382, 64 S.E.2d 789, 797 (1951))). The Musselman court enumerated three extraordinary exceptions to the Virginia policy shielding corporate officers from personal liability by third parties: (1) piercing the corporate veil where a corporation is a sham to disguise wrongs, obscure fraud, or conceal crime; (2) holding directors liable when the officers abuse their positions by preferring themselves, over other creditors, in the repayment of loans made to the corporation; and (3) under the "trust fund doctrine," in which directors may be held liable when those individuals have engaged in self-dealing acts. Id. at 797-99.

Plaintiffs contend that in its prediction of how the Supreme Court of Virginia would rule, the Musselman court overlooked a number of precedents which suggest that the issue is not one of self-dealing, but instead one of insolvency. Plaintiffs aver that under the "insolvency exception," once a corporation becomes insolvent, the shareholders, to whom normally the duties flow, no longer have a stake in the corporation. Rather, the creditors are the ones with a financial interest in the corporation and its assets. See In Re: Ben Franklin Retail Stores, 225 B.R. 646 (Bankr. N.D. Ill. 1998) aff'd in part, No. 97C6043, 97C7934, 1999 WL 982963 (N.D. Ill. Oct 26, 1999) amended by 2000 WL 28266, 43 Collier Bankr. Cas. 2d (CCH) 9 (N.D. Ill. Jan 12, 2000). Plaintiffs point out that the Musselman court did not address this principle of shifting duties, and though it relies partially on the ruling by the Supreme Court of Appeals of Virginia in Anderson v. Bundy, it fails to discuss the remainder of the holding, in which the court stated that while no direct action rests in a creditor of a corporation against its directors, the creditors must sue "in the right of the corporation, after the corporation, or its proper representatives, have refused to act." Anderson, 161 Va. at 21, 171 S.E. at 508. Plaintiffs assert that because ROA is presently in receivership, and the Deputy Receiver is not pursuing claims asserted by Plaintiffs against Wages, Plaintiffs have rights which must be protected.

In Anderson, the directors of a bank were sued by depositors for negligence in overseeing the affairs of the bank, and the court held that where the receiver of the bank refused to sue directors for negligence, depositors could then bring such suit. Anderson, 161 Va. at 23, 171 S.E. at 508. The court found that where the bank's manager and cashier authorized excessive loans by the bank, along with other irregularities, including embezzlement by the cashier, the directors were held liable following the bank's failure because they trusted the cashier without proper efforts to ascertain the true condition of the bank. Id.

In further support of their position, Plaintiffs note the rulings of courts in other jurisdictions. The New York Court of Appeals has held that its state's corporate laws provide that stockholders or creditors may sue directors for waste caused by negligence, and that "if the corporation was insolvent at the time, it is clear that the defendants, as officers and directors thereof, were to be considered as though trustees of the property for the corporate creditor-beneficiaries." New York Credit Men's Adjustment Bureau, Inc. v. Weiss, 305 N.Y. 1, 110 N.E.2d 397 (1952). The appellate court disagreed with the defendant's claim that the suit could not be maintained without evidence of fraud or self-dealing, holding that the inability of plaintiff to show such actions does not necessarily absolve the fiduciaries from any liability. Id. at 9, 110 N.E.2d at 399. Plaintiffs also cite a Massachusetts Bankruptcy case in which board members were sued by a trustee on behalf of the corporation's creditors. In re: Healthco International, Inc. 208 B.R. 288 (Bankr. D. Mass. 1997). While the court first found that the trustee was in fact acting on behalf of the corporation, and not the creditors, it stated that "[w]hen a transaction renders a corporation insolvent, the rights of the creditors become paramount." Id. at 300. Plaintiffs further contend that even in cases that involve self-dealing, the basis of many of the rulings permitting a creditor's lawsuit directly against the management is the insolvency of the corporation, not self-dealing. See, e.g., DeNune v. Consolidated

Capital of North America, Inc., 288 F. Supp 2d 844, 859 (N.D. Ohio 2003)("Under long-standing Ohio law, the officers and directors of a corporation that is insolvent or on the brink of insolvency owe a fiduciary duty to the corporation itself and to its creditors not to waste corporate assets which otherwise could be used to pay corporate debts."); In re Buckhead America Corp., 179 B.R. 956, 968 (D. Del. 1994)("[W]here a corporation is operating in the vicinity of insolvency, a board of directors is not merely an agent of the residue risk bearers, but owes its duty to the corporate enterprise... including the corporation's creditors.");

In his reply, Defendant argues that the Musselman court's lack of acknowledgment of the "insolvency exception" does not, as Plaintiffs contend, indicate a failure to consider all the relevant issues. Defendant maintains that the court very specifically provides for three extraordinary exceptions to the general rule of non-liability, and that as insolvency, in the absence of self-dealing, is not one of them, such an exception simply does not apply. Defendant distinguishes Anderson from the present case on the grounds that the court, in 1933, found that the bank's directors occupied a fiduciary position in relation to the bank's depositors, and corporations of today do not stand in a similar fiduciary capacity to shareholders. Defendant further claims that even with the Anderson court's allowance of creditors to sue directors where the corporation refuses to do so, Plaintiffs have failed to allege any circumstances under which ROA's right to sue was acquired by Plaintiffs.

Considering the low threshold to be applied to motions to dismiss under Rule 12(b)(6), however, the Court finds that dismissal is not appropriate at this juncture. Tyler v. Woodson, 597 F.2d 643, 644 -45 (C.A. Mo. 1979) (the court's narrow inquiry on a motion to dismiss under Rule 12(b)(6) "is based upon whether 'the claimant is entitled to offer evidence to support the claims,' not whether the plaintiff can ultimately prove the facts alleged," (quoting Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974))). In the Court's opinion, the Plaintiffs have

13

set forth sufficient allegations to permit this case to proceed. Likewise, the Court, at this point, cannot conclude that the Plaintiffs could present no factual basis which would allow them a recovery.

Accordingly, the Defendant's motion to dismiss the complaint as amended pursuant to Rule 12(b)(2) and Defendant's motion to dismiss the complaint as amended pursuant to Rule 12(b)(6) are DENIED.

IT IS SO ORDERED this 30ᵗʰ day of September, 2005.

J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

14

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 178 in case 2:04-CV-01551 was distributed by fax, mail, or direct printing on October 3, 2005 to the parties listed.

---

William H. Farmer
FARMER & LUNA
333 Union St.
Ste. 300
Nashville, TN 37201

Patrick H. Cantilo
CANTILO & BENNETT LLP
7501-C North Capital Of Texas Highway
Ste. 200
Austin, TX 78731

Jere L. Beasley
BEASLEY ALLEN CROW METHVIN PORTIS & MILES
P.O. Box 4160
Montgomery, AL 36103--416

Jef Feibelman
BURCH PORTER & JOHNSON
130 N. Court Avenue
Memphis, TN 38103

B. J. Wade
GLASSMAN EDWARDS WADE & WYATT, P.C.
26 N. Second Street
Memphis, TN 38103

Robert G. Methvin
MCCALLUM & METHVIN, PC
2201 Arlington Ave., S.
Birmingham, AL 35205

Jonathan P. Lakey
PIETRANGELO COOK
6410 Poplar
Ste. 190
Memphis, TN 38119

Honorable J. Breen
US DISTRICT COURT