IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

In re

RECIPROCAL OF AMERICA (ROA)
SALES PRACTICES LITIGATION

Master File No. MDL 1551

This Document Relates to:
Civil Action No. 04-2294

FILED BY _____ D.C.

05 DEC 22  AM 10: 41

THOMAS M. GOULD
CLERK, US DISTRICT COURT
W/D OF TN, MEMPHIS

ORDER GRANTING MOTION OF DEFENDANTS MILLIMAN, INC. AND
ROBERT L. SANDERS FOR PARTIAL DISMISSAL OF COMPLAINT OF
PLAINTIFFS MISSOURI HOSPITAL PLAN, HOSPITAL SERVICES GROUP, INC.,
HEALTHCARE SERVICES ASSOCIATION, PROVIDERS INSURANCE CONSULTANTS,
and MEDICAL LIABILITY ALLIANCE

Before the Court in this multi-district litigation are the motion of the Defendants, Milliman, Inc. ("Milliman") and Robert L. Sanders, for partial dismissal pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure; the response Memorandum in Opposition filed by the Plaintiffs, and the Reply of the movants.

The Plaintiffs, Missouri Hospital Plan ("MHP"), Hospital Services Group, Inc. ("HSG"), Healthcare Services Association ("HSA"), Providers Insurance Consultants, Inc. ("ProCon"), and Medical Liability Alliance ("MLA"), state in their complaint that in August 2000, plaintiffs and non-parties Reciprocal of America ("ROA"), The Reciprocal Group ("TRG"), and Doctors Insurance Reciprocal ("DIR") entered into a series of contractual agreements whereby the parties agreed to combine business operations, subject to Plaintiffs' right to terminate the business combination prior to closing. (2d. Am. Compl. at ¶ 31.) Plaintiffs terminated these agreements effective April 11, 2002 due to the deterioration of the financial condition of ROA following a downgrade of it's financial rating (2d. Am. Compl. at ¶ 33.) Plaintiffs claim that, as a result of being induced into the agreement, they have sustained substantial damages. (2d. Am. Compl. at ¶ 39.)

This document entered on the docket sheet in compliance
with Rule 58 and/or 79(a) FRCP on 12-22-05



According to the complaint, Milliman is a State of Washington corporation, doing business in Jefferson City, Missouri and Richmond Virginia, providing actuarial analysis and audits, loss and expense reserve evaluations and consulting services for ROA, DIR, and others, and serving as a consultant for Plaintiffs regarding certain transactions. (2d. Am. Compl. at ¶ 7.) The complaint alleges that Robert L. Sanders was at all relevant times a principal of Milliman and participated in numerous meetings in Missouri for transactions related to the cause of action. (2d. Am. Compl. at ¶ 8.) Plaintiffs claim that Milliman is liable for the actions and omissions of Sanders and its other agents which were within the course and scope of their duties.[1] (2d. Am. Compl. at ¶ 26.)

Plaintiffs' causes of action include claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. 1961, *et. seq.* It is asserted that Milliman, Sanders, and other defendants conducted, or participated (directly or indirectly) in the conduct of, the affairs of an association-in-fact enterprise (the "Association-in-Fact Enterprise") through a pattern of racketeering activity, or conspired to do so. (2d. Am. Compl. at ¶ 60.) Alternatively, Plaintiffs make the same assertions against these parties with regard to the affairs of ROA and TRG (the "ROA/TRG Enterprise"). (2d. Am. Compl. at ¶ 64.) According to the complaint, Milliman and other defendants, through their agents and employees including Sanders, also misrepresented to the Plaintiffs about the financial condition of ROA, TRG, DIR, and other entities. (2d. Am. Compl. at ¶ 133.)

In cases transferred from one federal judicial district to another pursuant to a change of venue, the transferee court shall "apply the law of the transferor court, regardless of who initiates the transfer." Ferens v. John Deere Co., 494 U.S. 516, 110 S.Ct. 1274, 108 L.Ed.2d 443 (1990); see also,

---

[1] The movants, Milliman, Inc. and Robert L. Sanders, are referred to collectively throughout as "Milliman."

2

Van Dusen v. Barrack, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). This same principle has been traditionally followed in cases consolidated by the Multidistrict Panel pursuant to the provisions of 28 U.S.C. §§ 1407. In re San Juan Dupont Plaza Hotel Fire Litigation, 745 F. Supp. 79, 81 (D. Puerto Rico,1990); see also In re Air Crash Disaster Near Chicago, Ill. on May 25, 1979, 644 F.2d 594 (7th Cir.1981); In re Air Crash Disaster at Washington, D.C. on January 13, 1982, 559 F. Supp. 333 (D.D.C.1983). Therefore, as this case originated in the United States District Court for the Western District of Missouri but transferred to this district as part of an order from the Multidistrict Panel, Missouri law governs in resolving this motion.

The Court will first address the Defendants' contentions pursuant to Federal Rule of Civil Procedure Rule 12(b)(6), which permits dismissal of a lawsuit for failure to state a claim upon which relief could be granted. See Fed. R. Civ. P. 12(b)(6). A court may dismiss a cause of action for failure to state a claim if it appears beyond a doubt that the plaintiffs can prove no set of facts in support of their claim that would entitle them to relief. Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed.2d 80 (1957); Alexander v. Peffer, 993 F.2d 1348, 1349 (8th Cir.1993). "The issue is not whether plaintiff will ultimately prevail but whether the claimant[s] are entitled to offer evidence to support [their] claim[s]." Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed.2d 90 (1974); see also Bennett v. Berg, 685 F.2d 1053, 1058 (8th Cir.1982) (a complaint should not be dismissed merely because the court doubts that a plaintiff will be able to prove all of the necessary factual allegations). The Court must review the complaint most favorably to the plaintiffs and take all well-pleaded allegations as true to determine whether they are entitled to relief. Conley, 355 U.S. at 45-46. A dismissal under Rule 12(b)(6) should be granted only in the unusual case in which a plaintiff has presented allegations that show on the face of the complaint that there is some

3

insuperable bar to relief. Coleman v. Watt, 40 F.3d 255, 258 (8th Cir.1994).

Defendants assert that Plaintiffs' RICO claims in Counts 1 and 2 of the amended complaint should be dismissed as to Milliman. Count 1 of the amended complaint alleges a violation of 18 U.S.C § 1962(c), which states that

> [i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. 1962 (c)(1970). Plaintiffs contend that Milliman and other Defendants were employed by or associated with either the Association-in-Fact Enterprise or the ROA/TRG Enterprise, engaged in interstate commerce and participated in the conduct of either or both of the enterprises' affairs through a pattern of racketeering activity, including mail fraud and wire fraud. In addition, Plaintiffs relied to their detriment on Defendants' material misrepresentations and fraudulent omissions. (2d. Am. Compl. at ¶¶ 124-28.)

Defendants maintain that the complaint fails to plead any facts that, if proven, would demonstrate that Milliman participated in the operation or management of either alleged enterprise as required by the United States Supreme Court in Reves v. Ernst & Young, 507 U.S. 170, 183, 113 S. Ct. 1163, 1173, 122 L. Ed. 2d 525 (1993). Defendants contend that under Reves, in order for a defendant to be held responsible for a RICO violation, he must not only have participated in the scheme but "participate[d] in the operation or management of the enterprise itself." Id. at 183. In order for someone outside the enterprise, such as an actuary, to participate in the operation and management of the enterprise and for liability to attach, the Defendants claim the outsider must have some part in directing the enterprise's affairs. Id. at 179. Plaintiffs have failed to plead, argue the

4

Defendants, little more than that Milliman performed deficient actuarial services, but have not alleged any facts indicating that Milliman participated in directing the affairs of either the Association-in-Fact Enterprise or the ROA/TRG Enterprise, such as to hold the Defendants liable.

In Reves, the Supreme Court approved and adopted an "operation or management" test established by the Eight Circuit in Bennett v. Berg, 710 F.2d 1361, 1364 (en banc), cert. denied sub nom. Prudential Ins. Co. of America v. Bennett, 464 U.S. 1008, 104 S. Ct. 527, 78 L. Ed. 2d 710 (1983). Reves, 507 U.S. at 184, 113 S. Ct. at 1172. The Court held that to establish RICO liability under this test, a plaintiff must show that a defendant had some part in directing the enterprise's affairs. In Reves, an accounting firm provided financial audit services to an organization, The Farmer's Cooperative of Arkansas and Oklahoma, Inc. ("Co-op") which subsequently became insolvent. Id. at 173-75, 113 S. Ct. at 1167-68. The firm certified that the Co-op's financial status was adequately reflected by its records, upon which the firm relied, in combination with a review of past Co-op transactions, to prepare the Co-op's audits. Id. In completing these assignments, and without informing the organization's board, the accounting firm utilized questionable measures to verify the Co-op's solvency.[2] Id. The Supreme Court affirmed the decision of the Eighth Circuit, finding that the accounting firm's review of a series of completed transactions and certification of the Co-op's records as fairly portraying its financial status did not satisfy the degree of management required to constitute direction of a RICO enterprise. Id. at 186, 113 S. Ct. at 1173-74.

---

[2]Central to the accounting firm's task in performing the Co-op audit was determining the value of White Flame Fuels, Inc., acquired by the Co-op under a consent decree that provided that the Co-op had owned White Flame since February 15, 1980. If the Co-op had owned White Flame from the beginning of construction on its new plant, White Flame's value for accounting purposes would be its fixed-asset value of $4.5 million. However, if the Co-op had purchased White Flame, it would have to be given its fair market value at the time of purchase, which was estimated to be between $444,000 and $1.5 million, and the Co-op would be insolvent. The accountant concluded that the Co-op had owned White Flame from the start, that it should be valued at $4.5 million on the Co-op's books, and that the Co-op was solvent.

Plaintiffs maintain that under Reves, the imposition of RICO liability only required some participation in the management of an organization, not significant control. Reves 507 U.S. at 179, 113 S. Ct. at 1170. They argue that third parties providing professional services "may be liable under § 1962(c) if they are 'associated with' an enterprise and participate in the conduct of *its* affairs– that is, participate in the operation or management of the enterprise itself..." Id. at 185, 113 S. Ct. at 1173. Relying on U.S. v. Turkette, 452 U.S. 576, 583 (1981), in which the Supreme Court defined "enterprise" as a "group of persons associated together for a common purpose of engaging in a course of conduct," Plaintiffs argue that the amended complaint clearly alleged that an enterprise existed with which Milliman was associated, claiming that their pleading sufficiently set forth "that there was a group of persons all attempting to achieve a common purpose– that is to defraud regulators, investors, and creditors about the condition of ROA ..." (see Mem. in Opp'n to Milliman, Inc.'s and Robert L. Sanders' Mot. Dismiss ("Mem. in Opp'n") at 13.)

In reply, Milliman maintains that Plaintiffs' allegations are nothing more than conclusory statements that all RICO defendants participated in the decision-making and managing of the alleged enterprise, but that such statements are insufficient to state a claim under § 1962 (c). See Gean v. Hattaway, 330 F.3d 758, 765 (6th Cir. 2003) ("we accept as true only the factual allegations of the non-moving parties, and need not accept as true legal conclusions or unwarranted factual inferences set forth in the complaints."). Milliman argues that Plaintiffs have failed to point to any paragraphs within their complaint which show they adequately plead that Milliman directed the affairs of a RICO enterprise.

The second part of Milliman's Rule 12(b)(6) motion addresses Count 2 of the amended complaint, which also claims a violation of 18 U.S.C § 1962(c). However, as presumed by Milliman

and acknowledged by the Plaintiffs, Count 2 is intended to be allegations under § 1962(d), which states that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C § 1962(d) (1970). Plaintiffs claim that Milliman, Sanders, and other defendants "conspired to violate 18 U.S.C § 1962(c) in that they agreed to pursue the same criminal objective as, and further the criminal endeavors of, those defendants who participated in the management or operation of the RICO enterprise." (2d. Am. Compl. at ¶ 130.)

Defendants maintain that Plaintiffs' § 1962(d) claim must also be dismissed as to Milliman because Plaintiffs failed to allege facts showing that the Defendants knowingly agreed to facilitate the activities of any RICO enterprise. Defendants cite Salinas v. United States, 522 U.S. 52, 118 S. Ct. 469 (1997), a criminal RICO case, which holds that in order to be found liable as a conspirator, a defendant must "adopt the goal of furthering or facilitating" the endeavor of the RICO enterprise. Defendants argue that Plaintiffs have failed to plead such a detailed agreement by Milliman. In addition, the Defendants insist that the Plaintiffs have not alleged that Milliman made either a written or oral agreement to undertake any actions made illegal by RICO or in furtherance of such an agreement. Defendants argue that Plaintiffs have made only conclusory statements that Milliman and other defendants "shared the purposes of avoiding and minimizing regulatory scrutiny, concealing the true financial condition..., concealing the financial difficulties... concealing ROA's insolvency." (2d. Am. Compl. at ¶ 67.) According to Defendants, Plaintiffs only factual allegations with regard to Milliman are that the company prepared annual actuarial reserve opinions for ROA and other entities which "did not accurately reflect realistic loss reserves," and provided additional actuarial and consulting services. (2d. Am. Compl. at ¶¶ 7, 117.)

Plaintiffs respond that their allegation that Milliman conspired with the other Defendants to

7

conduct racketeering (2d. Am. Compl. at ¶ 130.) is sufficient in and of itself to state a cause of action for a violation of § 1962(d). They submit that Rule 8 pleading requirements, "only require[] that plaintiff provide a short and plain statement showing it is entitled to relief." Shared Network Technologies, Inc. v. Taylor, 669 F. Supp. 422, 425 n.1 (N.D. Ga. 1987). Plaintiffs contend that their complaint cites specific and numerous instances of mail and wire fraud by the conspirators to further the objectives of the their illegal and fraudulent scheme and to hide the true condition of the corporations from regulators and plaintiffs. (Mem. in Opp'n, at 19.) Additionally, according to Plaintiffs, Milliman's participation as actuary and consultant permitted the enterprise to continue longer than it otherwise would have.

When a plaintiff has already established a right to relief under §§ 1962(c), he may show a conspiracy to violate RICO simply by presenting additional evidence that the defendant entered into an agreement to breach the statute. See Handeen v. Lemaire, 112 F.3d 1339, 1354 -1355 (8th Cir.1997) (citing United States v. Bennett, 44 F.3d 1364, 1374 (8th Cir.), cert. denied, --- U.S. ----, 115 S. Ct. 2279, 132 L. Ed.2d 282, and cert. denied, 515 U.S. 1145, 115 S. Ct. 2585, 132 L. Ed.2d 833, and cert. denied, 516 U.S. 828, 116 S. Ct. 98, 133 L. Ed.2d 52 (1995). A plaintiff "need only establish a tacit understanding between the parties, and this may be shown wholly through the circumstantial evidence of [each defendant's] actions." Id. (citing U.S. v. Darden, 70 F.3d 1507, 1518 (8th Cir.1995)).

In this case, Plaintiffs have made allegations that a certain group of the defendants (referred to by Plaintiffs as "RICO defendants") "participated in the decision-making of [and] acted... by directing and managing" the Association-in-Fact Enterprise or the ROA/TRG Enterprise. (2d. Am. Compl. at ¶ 61.) However, Plaintiffs have failed to provide any facts supporting their contention that Milliman had any control over the direction of the alleged enterprises, stating only that Milliman

provided, however negligently, actuarial and consulting services. Furthermore, Plaintiffs have made no allegations of the existence of an understanding between the parties that amounts to a conspiracy. The amended complaint alleges that Milliman's Statement of Actuarial Opinion issued on February 22, 2002 did not disclose Milliman's knowledge of the existence of a proposed loss portfolio transfer ("LPT"), and did not calculate the possible impact of the LPT as a material change in Milliman's assumptions to their Actuarial Opinion. (2d. Am. Compl. at ¶¶ 109, 113, 114.) However, the amended complaint filed in a separate action (Gross v. General Reinsurance Corporation, et.al, No. 04-CV-2313) and incorporated herein by Plaintiffs' complaint, claims that, in fact, one month after the filing of its actuarial opinion, Milliman did disclose the existence of the LPT and stated that the potential impact had not been calculated. (Gross Am. Compl. at ¶ 327.)

In the Court's opinion, the Plaintiffs have not set forth adequate allegations to sustain Counts 1 and 2 of their amended complaint. The Plaintiffs have failed to sufficiently plead that Milliman and Sanders participated in the management and control of, or had any part in directing the affairs of the alleged enterprises. Further, Plaintiffs have not alleged sufficient facts that Milliman and Sanders knowingly facilitated the activities of the alleged enterprises to sustain the claim of conspiracy. Accordingly, Milliman, Inc. and Sanders' motion to dismiss pursuant to Rule 12(b)(6) Counts 1 and 2 of the complaint, as amended, against them, is GRANTED.

Milliman further asserts that dismissal of Counts 3, 4, 9, and 10 of Plaintiffs' amended complaint is appropriate under Rule 9(b) for failure to plead fraud with particularity. "In all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity." Fed. R. Civ. P. 9(b). One of the purposes of Rule 9(b) is to facilitate a defendant's response to and preparation of a defense to charges of fraud. Commercial Prop. Invs., Inc. v. Quality Inn Int'l, Inc., 61 F.3d 639, 644 (8th Cir.1995). However, the obligation to plead the "circumstances" of the fraud

"with particularity" should not be taken as requiring an allegation of detailed evidentiary matters. See Rose v. Arkansas Valley Environmental & Utility Authority, 562 F. Supp. 1180, 1203 (W.D. Mo. 1983) (citing Securities And Exchange Com'n. v. Tiffany Industries, 535 F. Supp. 1160, 1166-67 (E.D. Mo.1982)). What is required

> is simply a pleading which is specific enough to permit the defendant to identify the acts or omissions with which he is charged, the general basis for their claimed fraudulent character, and their effect upon the plaintiff--in short, a pleading which provides the defendant with fair notice of the fraud which is claimed against him, and which evidences a reasonable belief on plaintiff's part that his claim has merit.

Rose, 562 F. Supp. at 1203, (citing Gilbert v. Bagley, 492 F. Supp. 714, 727 (M.D.N.C.1980). However, "conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule."Commercial Prop. Invs., Inc., 61 F.3d at 646. "Circumstances" that must be stated include such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby. Bennett v. Berg, 685 F.2d 1053, 1062 (8th Cir. 1982) adhered to on reh'g, 710 F.2d 1361.

Defendants argue that Plaintiffs have failed to meet even a liberal reading of Rule 9(b). They maintain that Plaintiffs' claims are disproved by the calendar; that they are based on the consequences of a transaction that Plaintiffs entered into in 2000, and that the facts supporting the only allegations pled with any specificity against Milliman commenced with its 2001 Statement of Actuarial Opinion and subsequent actions (2d. Am. Compl. at ¶ 113.) Thus, Defendants aver that the Plaintiffs could not have relied upon Milliman's opinion. Defendants further allege that Plaintiffs have simply "lumped together" all of the defendants in their allegations of fraud and argue that such a grouping makes it impossible for the Defendants, or the Court, to determine if claims have been properly alleged against individual defendants. See Brooks v. Blue Cross and Blue Shield

of Florida, Inc., 116 F.3d 1364, 1381 (11th Cir.1997)(citing Vicom, Inc. v. Harbridge Merchant Servs., Inc., 20 F.3d 771, 778 (7th Cir.1994)(holding that as the amended complaint was devoid of specific allegations with respect to the separate defendants, and failed to set forth the time, place, and manner in which any specific predicate act occurred, it was subject to dismissal without prejudice for failure to plead fraud with the requisite specificity as to each of the defendants under Rule 9(b)).

Plaintiffs contend in response that there are two sets of alleged misrepresentation by Milliman upon which they base their claims: those made prior to August 17, 2000, that induced Plaintiffs to enter into the business combination, and the statement of opinion in 2002 that induced Plaintiffs not to terminate the business combination. Plaintiffs further maintain that Rule 9(b) does not require a plaintiff to present evidence of fraud in his complaint, citing Michaels Bldg. Co. v. Ameritrust Co. N.A., 848 F.2d 674, 680 (6th Cir. 1988)("It is a principle of basic fairness that a plaintiff should have an opportunity to flesh out her claim through evidence unturned in discovery. Rule 9(b) does not require omniscience; rather, the Rule requires that the circumstances of fraud be pled with enough specificity to put defendants on notice as to the nature of the claim."). Plaintiffs argue that it not per se deficient to combine the defendants together without separating out their individual involvement in the fraud, citing Picard Chemical Inc. Profit Sharing Plan v. Perrigo Co., 940 F. Supp. 1101 (W.D. Mich. 1996).

In Picard, a Michigan district court held that Rule 9(b) is satisfied when plaintiffs have relied "upon a presumption that the allegedly false and misleading 'group published information' which forms a basis of a suit sounding in fraud is the collective action of corporate officers and directors." Picard, 940 F. Supp. at 114-15. The court stated that where the allegedly false and misleading information is conveyed in "group published information" such as prospectuses, registration statements, annual reports, etc., "it is reasonable to presume that these are the collective actions of

the officers." Id. Even under such circumstances, the court held that "a plaintiff is still required to plead the misrepresentations with particularity and where possible the roles of the individual defendants in misrepresentations." Id.

Milliman argues in its reply that the Picard exception applies only when the defendants to be lumped together have "published" a document by which it can be presumed they took collective action. Picard, 940 F. Supp. at 1127. Therefore, according to Milliman, as no such document exists (or has been alleged to exist) in this case, the reliance of Plaintiffs on "group pleading" is inappropriate and does not provide a basis for Plaintiffs to lump them with other defendants.

In this case, the Court finds that the Plaintiffs' pleadings are insufficient to meet the particularity requirements of Rule 9(b). The allegations are deficient as to time, place and content of the alleged misrepresentations. See Wiley v. Mitchell, 106 Fed. Appx. 517, 522 (8th Cir. 2004)("Rather than setting forth the specific circumstances constituting fraud, plaintiff makes only vague allegations that fail to specify what representations were made to him, who made the representations, and when and where the representations were made."). Further, Plaintiffs' "lumping" of Milliman with other defendants is impermissible in the absence of group published information. See Picard, 940 F. Supp. at 114-15. Because fair notice is "[p]erhaps the most basic consideration" underlying Rule 9(b), the plaintiff who pleads fraud must "reasonably notify the defendants of their purported role in the scheme." Vicom, 20 F.3d at 777-78 (quoting Midwest Grinding Co. v. Spitz, 976 F.2d 1016, 1020 (7th Cir.1992)). Therefore, in a case involving multiple defendants ... "the complaint should inform each defendant of the nature of his alleged participation in the fraud." Id. (quoting DiVittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1247 (2d Cir.1987)); see also Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir.1993)("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to

'defendants.'"); Davies v. Genesis Medical Center Anesthesia & Analgesia, P.C., 994 F. Supp. 1078, 1090 (S.D. Iowa 1998)("When a complaint accuses multiple defendants of participating in a scheme to defraud, plaintiffs must identify which defendants were responsible for the separate acts of fraud."); Balabanos v. North Am. Inv. Group, Ltd., 708 F. Supp. 1488, 1493 (N.D. Ill.1988)("[T]he complaint should inform each defendant of the specific fraudulent acts that constitute the basis of the action against the particular defendant."). Accordingly, the motion of Milliman, Inc. and Robert L. Sanders to dismiss Counts 3, 4, 9, and 10 of the Plaintiffs' amended complaint as to them is also GRANTED.

IT IS SO ORDERED this 21st day of December, 2005.

J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 196 in case 2:04-CV-01551 was distributed by fax, mail, or direct printing on December 22, 2005 to the parties listed.

---

Jonathan P. Lakey
PIETRANGELO COOK
6410 Poplar
Ste. 190
Memphis, TN 38119

B. J. Wade
GLASSMAN EDWARDS WADE & WYATT, P.C.
26 N. Second Street
Memphis, TN 38103

Jere L. Beasley
BEASLEY ALLEN CROW METHVIN PORTIS & MILES
P.O. Box 4160
Montgomery, AL 36103--416

Robert G. Methvin
MCCALLUM & METHVIN, PC
2201 Arlington Ave., S.
Birmingham, AL 35205

Jef Feibelman
BURCH PORTER & JOHNSON
130 N. Court Avenue
Memphis, TN 38103

William H. Farmer
FARMER & LUNA
333 Union St.
Ste. 300
Nashville, TN 37201

Patrick H. Cantilo
CANTILO & BENNETT LLP
7501-C North Capital Of Texas Highway
Ste. 200
Austin, TX 78731

Honorable J. Breen
US DISTRICT COURT