IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

In re

RECIPROCAL OF AMERICA (ROA)
SALES PRACTICES LITIGATION

Master File No. MDL 1551

This Document Relates to:
Civil Action No. 04-2078

_____

ORDER GRANTING MOTION OF DEFENDANTS CREWS, KELLEY
AND MCLEAN TO DISMISS AMENDED COMPLAINT
_____

INTRODUCTION AND BACKGROUND

Before the Court in this multi-district litigation is the motion (Doc. No. 63) of the

Defendants, John William Crews, Judith A. Kelley and Gordon D. McLean (the "CKM

Defendants"), to dismiss the amended complaint filed by the Plaintiff, Paula A. Flowers,

Commissioner of Commerce and Insurance for the State of Tennessee (sometimes referred to herein

as the "Commissioner"), in her capacity as Liquidator for Doctors Insurance Reciprocal, Risk

Retention Group ("DIR"), American National Lawyers Insurance Reciprocal, Risk Retention Group

("ANLIR") and The Reciprocal Alliance, Risk Retention Group ("TRA") (referred to collectively

herein as the "RRGs"),[1] pursuant to Rules 9(b), 12(b)(3) and 12(b)(6) of the Federal Rules of Civil

Procedure.

The facts alleged in this litigation have been summarized in the Court's previous orders on

motions to dismiss and need not be repeated here.  As in her original complaint, Flowers has alleged

_____

[1]In an order entered March 1, 2007, subsequent to the filings of the amended complaint at
issue and the motion to dismiss currently before the Court, Leslie A. Newman was substituted as
the Plaintiff in this action, as she succeeded Flowers as Commissioner and Liquidator of the
RRGs.  However, in the name of consistency, the Commissioner will be referred to herein as
"Flowers" rather than "Newman."

in her amended pleading claims of violation of the Racketeer Influenced and Corrupt Organizations

Act ("RICO"), 18 U.S.C. § 1961, et seq.; RICO conspiracy in violation of 18 U.S.C. § 1962(d); as

well as fraud; civil conspiracy; unjust enrichment; negligence; breach of fiduciary duty; fraudulent

transfers and preferences; misappropriation and negligent handling of trust funds; and malpractice

under Tennessee state law.[2]  In a series of orders, this Court granted motions filed by various

defendants to dismiss Flowers' original complaint on the grounds that she failed to satisfy the

standing requirement for the federal RICO claim.  Thereafter, the Plaintiff sought and was granted

permission to amend her complaint in order to cure the deficiencies identified by the Court.  The

gravamen of the instant motion to dismiss is that she has again fallen short of the pleading

requirements for such a claim.

ANALYSIS OF THE PARTIES' ARGUMENTS

*Standard of Review for Dismissal Pursuant to Rules 9(b) and 12(b)(6)*

Rule 12(b)(6) permits dismissal of a lawsuit for failure to state a claim upon which relief

could be granted.  See Fed. R. Civ. P. 12(b)(6).  The Rule requires the Court to "construe the

complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations

as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the

claims that would entitle relief."  Grindstaff v. Green, 133 F.3d 416, 421 (6th Cir. 1998).  "The

Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which

[she] bases [her] claim."  Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 103, 2 L. Ed. 2d 80

(1957).  However, "[t]o avoid dismissal under Rule 12(b)(6), a complaint must contain either direct

or inferential allegations with respect to all the material elements of the claim."  Wittstock v. Mark

---

[2]Some state law claims have not been alleged as to all Defendants.

A. Van Sile, Inc., 330 F.3d 899, 902 (6th Cir. 2003).

Rule 9(b) provides that "[i]n all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity." Fed. R. Civ. P. 9(b).  The Rule serves to put defendants on notice of the conduct complained of by the plaintiff to ensure that they are provided sufficient information to formulate a defense.  Michaels Bldg. Co. v. Ameritrust Co., N.A., 848 F.2d 674, 679 (6th Cir. 1988).  The Sixth Circuit interprets the particularity requirement "liberally, . . . requiring a plaintiff, at a minimum, to allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud."  Coffey v. Foamex L.P., 2 F.3d 157, 162 (6th Cir.1993) (internal quotations and citations omitted); Blount Fin. Servs., Inc. v. Walter E. Heller & Co., 819 F.2d 151, 152 (6th Cir. 1987) ("Fraud alleged in a RICO civil complaint for mail fraud must state with particularity the false statement of fact made by the defendant which the plaintiff relied on and the facts showing the plaintiff's reliance on defendant's false statement of fact."); see also Evans v. Pearson Enter., Inc., 434 F.3d 839, 852-53 (6th Cir. 2006) (affirming dismissal of fraud action where plaintiff failed to plead reliance with particularity as required by Rule 9(b)).  In ruling on a motion pursuant to Rule 9(b), a court must read the particularity requirement in harmony with the "policy of simplicity in pleading" advanced by Fed. R. Civ. P. 8, which requires that a complaint provide only a "short and plain statement of the claim."  Michaels Bldg. Co., 848 F.2d at 679 (quoting Fed. R. Civ. P. 8).  However, "a district court need not accept claims that consist of no more than mere assertions and unsupported or unsupportable conclusions."  Sanderson v. HCA - The Health Care Co., 447 F.3d 873, 876 (6th Cir.), cert. denied, ___ U.S. ___, 127 S. Ct. 303, 166 L. Ed. 2d 155 (2006).

*Substantive RICO Claim*

As she did in her original complaint, the Plaintiff alleges in Count 1 of the amended pleading that the CKM Defendants, along with others, violated RICO, codified at 18 U.S.C. § 1961 et seq., which provides that

> [i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).  In order to establish a RICO violation, the Plaintiff must show that the CKM Defendants engaged in "(1) conduct, (2) of an enterprise (3) through a pattern (4) of racketeering activity."  Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496, 105 S. Ct. 3275, 3285, 87 L. Ed. 2d 346 (1985).  Flowers' RICO claim is premised on predicate acts of mail and wire fraud, which "are forms of 'racketeering activity' for purposes of RICO."  See Anza v. Ideal Steel Supply Corp., ___ U.S. ___, 126 S. Ct. 1991, 1995, 164 L. Ed. 2d 720 (2006); 18 U.S.C. § 1341, 1343, 1961(1)(B).  In order to be "indictable" and thus, to sustain a claim under the RICO Act, each element of the predicate act must be proved.  Cent. Distrib. v. Conn, 5 F.3d 181, 183-84 (6th Cir.1993), cert. denied, 512 U.S. 1207, 114 S. Ct. 2678, 129 L. Ed. 2d 812 (1994).  Moreover, as noted above, to survive a motion to dismiss pursuant to Rule 9(b), the amended complaint must plead the circumstances of the mail and wire fraud with particularity.  See Fed. R. Civ. P. 9(b).

"The elements of mail and wire fraud are: (1) a scheme to defraud, and (2) use of the mails, or of an interstate electronic communication, respectively, in furtherance of the scheme."  Advocacy Org. for Patients & Providers v. Auto Club Ins. Assoc., 176 F.3d 315, 322 (6th Cir.1999), cert. denied, 528 U.S. 871, 120 S. Ct. 172, 145 L. Ed. 2d 145 (1999); see also Carpenter v. United States, 484 U.S. 19, 25 n.6, 108 S. Ct. 316, 320 n.6, 98 L. Ed. 2d 275 (1987) (noting that the same analysis

applies to offenses under both the mail and wire fraud statutes).  The Sixth Circuit has defined a

> scheme to defraud as intentional fraud, consisting in deception intentionally practiced to induce another to part with property or to surrender some legal right, and which accomplishes the designed end.  In other words, in order to present a cognizable claim for fraud, the plaintiff[] must show that [the defendants] made a material misrepresentation of fact that was calculated or intended to deceive persons of reasonable prudence and comprehension, and must also show that [the] plaintiff[] in fact relied upon that material misrepresentation.

VanDenBroeck v. CommonPoint Mortgage Co., 210 F.3d 696, 701 (6th Cir. 2000), reh'g denied

(Feb. 13, 2001) (internal quotations and citations omitted); see also Advocacy Org., 176 F.3d at 322

(quoting Kenty v. Bank One, Columbus, N.A., 92 F.3d 384, 389-90 (6th Cir.1996)); Cent. Distrib.,

5 F.3d at 184; Blount Fin. Servs., Inc., 819 F.2d at 152-53.  RICO's reliance requirement has been

interpreted to mean that "[a plaintiff] cannot maintain a civil RICO claim [predicated on mail or wire

fraud] against . . . defendants absent evidence that the defendants made misrepresentations or

omissions of material fact to [the plaintiff] and evidence that [the plaintiff] relied on those

misrepresentations or omissions to its detriment."  Cent. Distrib., 5 F.3d at 184; see also Brown v.

Cassens Transp. Co., 492 F.3d 640, 643 (6th Cir. 2007) (the well-established precedent of this circuit

requires that a civil RICO plaintiff alleging mail or wire fraud plead reliance, that is, that a defendant

made fraudulent representations to the plaintiff on which the plaintiff relied").

Applying Sixth Circuit precedent, this Court held in its previous order that "[w]ith respect

to . . . injury as a result of alleged fraudulent conduct by the CKM Defendants, the Plaintiff has not

demonstrated that *the RRGs* relied to *their* detriment on misrepresentation or omissions alleged

herein that were directed to *them.*"  (Order Granting Mot. of Defs. John William Crews, Judith A.

Kelley & Gordon D. McLean to Dismiss Fed. RICO Claims & Granting Pl.'s Req. to Am. Compl.

at 20) (emphasis in original).  The CKM Defendants assert herein that Plaintiff has failed to

sufficiently allege that the RRGs relied on acts of mail or wire fraud committed by them. In

response, the Plaintiff points to certain paragraphs of the 332-allegation amended complaint:

¶ 129   DIR's losses continued to mount throughout the 1990's, and as a result, DIR's trust account with [First Virginia Reinsurance "FVR"][3] fell into a $12 million deficit. This deficit presented problems for both the Management Defendants [Kenneth R. Patterson, Crews, Judith A. Hudgins, McLean and Kelley] and Gen Re. Neither the Management Defendants nor Gen Re could afford for this deficit to be discovered otherwise their fraudulent and incestuous relationship would have been uncovered by the regulators and by the Board Members of the RRG's and ROA. As such, the Defendants including the Management Defendants, Gen Re and FVR continued their fraudulent schemes to artificially inflate the surplus of DIR held by FVR.

¶ 130   In order to disguise the $12 million deficit, DIR sent FVR a $2 million letter of credit, and in addition, TRA[4] sent FVR a $10 million letter of credit. These letters of credit raised questions from Tennessee Department of Commerce and Insurance regulator Kathy Fussell because the instrument was in the form of a letter of credit rather than a premium. Following her inquiry with the Defendant Crews, Fussell was told to disregard the letters of credit because the deal had been unwound. Upon information and belief, this response to Fussell came as a result of contact between Crews and Gen Re.

¶ 131   Following the failure of the letter of credit scheme, Gen Re continued to pressure ROA to fill the hole the $12 million deficit had created in order to limit Gen Re's exposure under its reinsurance agreements. As a result, Patterson, Crews, and Hudgins conspired to make a disguised transfer of $10 million from ROA to the FVR Bermuda Trusts. The Gross Amended Complaint describes and identifies specific documents procured by Gross supporting the claims regarding the disguised $10 million transfer. Flowers adopts and incorporates paragraphs 211, 121 and paragraphs 214 through 223 of the Gross Amended Complaint. These paragraphs of the Gross Amended Complaint are set out herein as paragraphs 132 through 143 of the Flowers Amended Complaint.

---

[3]This entity has been described in the amended complaint as an off-shore company in whose creation Crews was instrumental and which was to serve as a reinsurer of all of ROA's retained share of risk on the physician and lawyer malpractice insurance business.

[4]According to the amended complaint, The Reciprocal Alliance, Risk Retention Group, or "TRA," was to insure health care providers in markets that ROA was unable to reach due to regulatory restrictions, and was controlled by Crews and Patterson.

¶ 132    Among the aforementioned agenda items for the December 4, 2000, meeting at Gen Re's headquarters was "Funding for Trust Agreement."  On information and belief, [Defendant] Patterson, Crews, and Hudgins conspired to make a disguised transfer of $10 million from ROA to the FVR Bermuda Trusts (assisted by the complicity of [Defendants Richard] Witkowski and Atlantic Security, and the complicity, reckless disregard, or negligence of [Defendant PricewaterhouseCoopers LLP ("PwC")]).  If such payment had not been disguised, the Companies, their policyholders and creditors, A.M. Best, and regulators likely would have discovered the schemes employing undisclosed rebates and deceptive reinsurance.

¶ 133    On December 28, 2000, Patterson and Hudgins transferred $10 million to be incorrectly and misleadingly accounted for as prepayment of reinsurance premiums to Gen Re, included in ROA's 2000 annual statement (filed under oath) among "Premiums Due from Reinsurance Companies," thereby inflating ROA's surplus to policyholders by $10 million.  On information and belief, Patterson, Crews, and Hudgins also caused ROA's 2000 annual statement to omit a $1.3 million reinsurance liability to Gen Re, thereby overstating surplus to policyholders by that additional amount.

¶ 134    Even after the December 28, 2000, fraudulent transfer of $10 million, the FVR Bermuda Trusts were underfunded.  In a February 21, 2001, wire transfer to Crews (copied to Hudgins), Patterson stated:

Bill, I have already gotten an email from [Defendant] Vicki [Seeger, of Gen Re] saying we are $10 - $14M short in the trust funds for FVR.  I haven't responded yet as I'm still churning on the presentation for [A.M.] Best.  We still need to brainstorm on the FVR situation. Between Surplus Notes at FVR and DIR's results, we continue to be cash challenged.  Nothing to do right now but Vicki is hot on this case before [Gen Re's] Steve Barbor [sic] gets involved.

¶ 135    While auditing ROA's statutory financial statements for the year ending December 31, 2000, PwC detected ROA's improper treatment of the $10 million "prepaid premiums" as an asset.  In a March 26, 2001, wire communication, Patterson enlisted the assistance of Crews in dealing with PwC:

Bill, I may need some help with the PwC auditors.  I hear that they are making threats about nonadmitting the $10M we sent to [Gen Re] before year end.  There was a meeting today and I'm not sure what was resolved but Fri is our deadline and I may need some "opining" from you, if possible.

¶ 136   By wire communication dated March 29, 2001, Patterson conveyed the following to Crews:

Hudge [sic] has spoken with [PwC's] Dave Ficca re: our prefunded $10M issue. We need to brainstorm with you on this as well. Once we take a position, I think it will be irreversible [sic] and if they want to -- they can possibly support that it's non admitted . . . .

p.s. Are your "cannons of ethics" loaded?

¶ 137   On information and belief, the result of the "brainstorming" by Crews, Patterson, and Hudgins represented an attempt to enlist the aid of Gen Re to support the fraudulent characterization by Patterson, Crews, and Hudgins of the $10 million "asset."

¶ 138   On or about April 2, 2001, Patterson asked Seeger to influence PwC on this issue, by fraudulently confirming in writing that the $10 million was a prepayment of premiums to Gen Re:

Will you please, by signing below where indicated, confirm that the $10 Million transfer to [Gen Re] in late December was explained to you as a prepayment that ROA made to the fund for premiums expected to normally have been remitted during the first quarter of 2001?

¶ 139   On information and belief, Patterson, Crews, and Hudgins also attempted to enlist the aid of [Defendant] Wachovia [Bank, National Association] (through Richard Hazelgrove) in influencing PwC on this issue.

¶ 140   On information and belief, PwC succumbed to the efforts of the RICO Defendants (including at least Patterson, Hudgins, and Crews),[5] failing to require ROA to non-admit the $10 million "prepaid premiums," even though PwC knew, or should have known, that this was a false entry. PwC only described the $10 million "prepaid premiums" as an "unusual transaction." PwC's failure to require ROA to non-admit the $10 million "prepaid premiums" constituted intentional, reckless, or negligent dereliction of its duty as an independent auditor and resulted in a material misstatement of ROA's financial condition.

¶ 147   The fraudulent $10 million transfer did not account for the entire $12 million

---

[5]The RICO Defendants are identified in the amended complaint as Patterson, Crews, Hudgins, Kelley, McLean, Richard W.E. "Dicky" Bland, Tom N. Kellogg, Seeger, Christopher Migel, Thomas M. Reindel, Sanders, Witkowski, Gen Re, Milliman USA, Inc., Crews & Hancock, P.L.C. and Atlantic Security.

8

deficit in DIR's trust account with FVR.  As a result, the RICO Defendants including the Management Defendants, Gen Re and FVR engaged in arbitrary reserve write-downs in the amount of $2 million.  These write downs were fraudulent and were relied upon by the Board of Directors of DIR, ANLIR and TRA to the detriment of the company and its policyholders.

¶ 149   The true nature of the $10 million fraudulent transfer from ROA to FVR Trusts was fraudulently characterized as a pre-paid insurance premium to the Board of Directors of ANLIR, TRA and DIR in each and every quarterly board meeting occurring in 1999 and 2000.  Specifically, in all board meetings during this time frame the $10 million transfer was presented to the Board of Directors of the RRGs as a pre-paid insurance premium.

¶ 150   The documents surrounding the fraudulent transfer were prepared and presented to the Board of Directors of the RRGs by the Management Defendants.

Flowers also refers the Court to Paragraphs 93-97, 102-03, 123-26, 156-58, 162, 165, 170, 175-76, 180-81, 186, 189, 199, 221-24 and 227-29.  Nowhere in these allegations does the Plaintiff aver that the CKM Defendants in particular made any material misrepresentation or omission directly to the RRGs' policyholders or to the Plaintiff herself as a regulator.[6]  Only in Paragraph 102[7] does the

---

[6]Indeed, it appears Flowers lacks standing to sue based on alleged misrepresentations to anyone but herself, as the Sixth Circuit has rejected the notion that mail or wire fraud directed at a third party can form the basis of a RICO claim.  See Brown, 492 F.3d at 645 n.2 ("Our court has explicitly rejected this approach, requiring that a plaintiff be the target of any alleged fraud").  In any case, the Court need not address this question, as it finds the amended complaint wanting on other grounds.

[7]Paragraph 102 alleges that

The RRGs paid premiums which were held in trust by FVR for the payment of claims.  Each RRG's pool of premiums paid was held in separate accounts for the benefit of each RRG by FVR.  The Management Defendants, particularly Crews, specifically represented to the Boards of Directors for each RRG that losses suffered by one RRG would have no impact on monies held by FVR for the benefit of another RRG.  Specifically, Crews told the ANLIR and TRA Boards of Directors that losses suffered by DIR would have no effect on ANLIR or TRA.  These statements and assurances by Crews and the other Management Defendants were false.  All of the Management Defendants were aware of the falsity of these statements and assurances and were under a duty to so inform the Board of Directors for each RRG.

Plaintiff aver that a CKM Defendant in particular, namely Crews, made any representation to the RRGs' Boards of Directors.  See Piccone v. Bd. of Dir. of Doctors Hosp. of Staten Island, Inc., 97 Civ. 8182(MBM), 2000 WL 1219391, at *6 (S.D.N.Y. Aug. 28, 2000) ("in cases with multiple defendants, Rule 9(b) requires that the complaint allege facts that specify each defendant's connection to the fraud.  General allegations against a group of defendants are insufficient"); Adler v. Berg Harmon Assoc., 790 F. Supp. 1222, 1228 (S.D.N.Y. 1992) ("Plaintiffs cannot satisfy Rule 9(b) by masking the lack of factual allegations against each defendant through broad allegations which combine the acts of several defendants to create the impression that all engaged in every aspect of the alleged fraud").

Even as to Paragraph 102, however, Flowers has failed to aver that the RRGs, or anyone else, relied on the misrepresentations by Crews alleged therein.  Pursuant to Rule 9(b), reliance must be plead with particularity.  Brown, 492 F.3d at 646 (finding that failure of complaint to contain allegations of reliance by plaintiff on misrepresentations by defendants fatal to RICO claim); Blount Fin. Serv., Inc., 819 F.2d at 152 ("Fraud alleged in a RICO civil complaint for mail fraud must state with particularity the false statement of fact made by the defendant which the plaintiff relied on and the facts showing the plaintiff's reliance on defendant's false statement of fact."); see also Dowling v. Select Portfolio Serv., Inc., No. 2:05-CV-049, 2006 WL 571895, *7 (S.D. Ohio Mar. 7, 2006) ("the plaintiff must plead the element of reliance with particularity."); Evans, 434 F.3d at 852-53 (affirming dismissal of fraud action where plaintiff failed to plead reliance with particularity as required by Rule 9(b)); McGee v. City of Warrensville Heights, 16 F. Supp. 2d 837, 850 (N.D. Ohio 1998) (dismissing RICO action where complaint failed to allege misrepresentations or reliance with particularity); Gould, Inc. v. Mitsui Mining & Smelting Co., Ltd., 750 F. Supp. 838, 842-43 (N.D. Ohio 1990) (finding that both the false statement or omission and the reliance thereon by the

plaintiff must be pled with particularity in civil RICO action based on mail or wire fraud).

Because the amended complaint has failed to plead standing with particularity, the § 1962(c)

claim against these Defendants must be DISMISSED.[8]

*RICO Conspiracy Claim*

The Plaintiff's claim against the CKM Defendants under 18 U.S.C. § 1962(d), which

prohibits conspiracy to violate the section's other substantive provisions,[9] is also DISMISSED. The

standing requirement of 18 U.S.C. § 1964(c) applies to all claims brought pursuant to RICO,

including conspiracy claims under § 1964(d).  Beck v. Prupis, 529 U.S. 494, 500-01, 120 S. Ct.

1608, 1613-14, 146 L. Ed. 2d 561 (2000).  Thus, to have standing to pursue a civil RICO conspiracy

claim, the Plaintiff must sufficiently allege "'injur[y] by reason of' a 'conspiracy.'"  Id., 120 S. Ct.

at 1613 (quoting 18 U.S.C. §§ 1964(c), 1962(d)).  In Beck, the United States Supreme Court

held "that a person may not bring suit under § 1964(c) predicated on a violation of § 1962(d) for

injuries caused by an overt act [in furtherance of the racketeering conspiracy] that is not an act of

racketeering or otherwise unlawful under the statute."  Id. at 507, 120 S. Ct. at 1617.  Based on the

amended complaint's failure to allege with particularity facts demonstrating acts of racketeering on

the part of the CKM Defendants, dismissal of the § 1962(d) claim is warranted.  See Odyssey Re

(London) Ltd. v. Stirling Cooke Brown Holdings, 85 F. Supp. 2d 282, 303 (S.D.N.Y. 2000), aff'd

2 F.App'x 109 (2d Cir. 2001) (dismissal of RICO conspiracy count appropriate where claims for

---

[8]As she has done in response to previous motions to dismiss in this case, Flowers argues for adoption by this Court of the so-called "target theory" espoused by some circuits which permits a RICO plaintiff to base his claim on mail or wire fraud directed at a third party.  See Procter & Gamble Co. v. Amway Corp., 242 F.3d 539, 565 (5th Cir. 2001).  However, as the Sixth Circuit noted in Brown, "[o]ur court has explicitly rejected this approach, requiring that a plaintiff be the target of any alleged fraud."  Brown, 492 F.3d at 645 n.2.

[9]Specifically, the statute provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."  18 U.S.C. § 1962(d).

11

mail and wire fraud had been dismissed).

*Remaining State Law Claims*

Although the Court in its original order found that diversity jurisdiction appeared to be present in this case, Flowers advises in her response to the dispositive motion that diversity does not in fact exist on the grounds that Defendant PwC is a limited liability partnership having partners in the state of Tennessee.  She further requests that the Court, as it did in the related action of Gross v. General Reinsurance, et al., No. 2:04-cv-02313 (W.D. Tenn.), exercise its discretion and dismiss the state claims without prejudice.  The exercise by a district court of supplemental, or pendent, jurisdiction over state law claims is governed by 28 U.S.C. § 1367, which expressly permits the Court to decline the exercise of jurisdiction when it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3).  Absent any remaining federal claims against the CKM Defendants, the Court, in its sound discretion, hereby dismisses without prejudice the Plaintiff's claims against the CKM Defendants under state law.  See Weeks v. Portage County Executive Offices, 235 F.3d 275, 279-80 (6th Cir. 2000) (district court's decision to decline to exercise supplemental jurisdiction lies within its sound discretion).

*Further Amendment of Complaint*

Finally, Plaintiff's response contains a footnote which states that she "reserves the right to file a Third Amended Complaint should the Court find that plaintiff's RICO allegations are insufficient."  (Pl. Paula A. Flowers' Resp. to the Defs. John William Crews, Judith A. Kelley & Gordon D. McLean's Mot. to Dismiss Flowers' Am. Compl. at 30 n.16)  However, the right to file a third amended complaint is not Flowers' to reserve.  Motions to amend a complaint are governed by Rule 15 of the Federal Rules of Civil Procedure, which permits amendment *"once* as a matter of course. . . . Otherwise, a party may amend the party's pleading only by leave of court or by written

consent of the adverse party."  Fed. R. Civ. P. 15(a) (emphasis added).  Since the Court takes the

CKM Defendants' vehement argument in their reply that the amended complaint should be dismissed

without leave to amend as a failure to consent thereto, Flowers may only amend her complaint with

leave of the Court.

While it is true leave to amend "shall be freely given when justice so requires," see Fed. R.

Civ. P. 15(a), denial of such a request may be warranted where there exists "undue delay, bad faith

or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments

previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment,

[or] futility of the amendment."  Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d

222 (1962); Morse v. McWhorter, 290 F.3d 795, 800 (6th Cir. 2002).  Here, despite 332 allegations,

the Plaintiff is still unable to adequately plead her RICO claims and the Court frankly remains

unconvinced that another bite at the apple would yield a different result.  Leave to amend is,

therefore, DENIED.  See Odyssey Re (London) Ltd., 85 F. Supp. 2d at 304 n.27 (in case involving

dismissal of RICO mail and wire fraud claims, leave to amend denied where "plaintiff has already

had an opportunity to replead after specific warnings as to a complaint's deficiencies").

CONCLUSION

Based on the foregoing, the motion of Defendants Crews, Kelley and McLean to dismiss

Flowers' amended complaint is hereby GRANTED as to the federal claims, the Plaintiff's state

claims are DISMISSED without prejudice, and leave to amend the complaint is DENIED.

**IT IS SO ORDERED** this 28th day of September, 2007.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

14